UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID G. HOTCHKISS,<br><br>                    Plaintiff,<br><br>     v.<br><br>CSK AUTO, INC., et al.,<br><br>                    Defendants. | NO:  12-CV-0105-TOR<br><br>ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS AND OTHER POST-TRIAL MOTIONS |

BEFORE THE COURT are the following motions: (1) Plaintiff's Motion for Attorney's Fees, Expert Fees and Other Costs (ECF No. 200); (2) Plaintiff's Motion to Compel Production of Defense Counsel's Billing Records (ECF No. 231); (3) Plaintiff's Motion for New Trial (ECF No. 225); and (4) Defendants' Motion to Amend Judgment (ECF No. 222).  These matters were heard with oral argument on May 29, 2013.  Patrick J. Kirby and Michael J. Delay appeared on behalf of the Plaintiff.  James M. Kalamon and Brook L. Cunningham appeared on

ORDER ~ 1

behalf of the Defendants.  The Court has reviewed the briefing and the record and files herein, and is fully informed.

DISCUSSION

**A. Plaintiff's Motion for Attorney's Fees and Costs**

Plaintiff seeks an award of attorney's fees and costs in the amount of $489,833.28 pursuant to RCW 49.60.030(2) after obtaining a $55,000 jury verdict on his retaliation claim under the Washington Law Against Discrimination ("WLAD").  This sum includes $471,085.50 in attorney's fees (including time billed by law clerks and support staff) and $18,747.78 in non-taxable out-of-pocket costs.[1]  Plaintiff also requests a "contingency multiplier" of 1.5, which, when applied to the claimed award of $471,085.50 in attorney's fees, would increase the total award of fees and costs to $706,628.25.  For the reasons discussed below, the Court finds that the requested award is unreasonable in view of the limited success that Plaintiff achieved at trial.  The Court will, however, award Plaintiff reasonable attorney's fees in the amount of $210,000 and costs in the amount of $18,747.78.

1. Lodestar Determination

A plaintiff who prevails on a claim under the WLAD is entitled to an award of costs and reasonable attorney's fees.  RCW 49.60.030(2).  In determining what

---

[1] *See* ECF Nos. 201, 202, 229, 230, 241, 242, 244 and 245.

constitutes a reasonable fee, courts must first calculate a "lodestar" figure by multiplying "the hours reasonably expended in the litigation by each lawyer's reasonable hourly rate of compensation." *Steele v. Lundgren*, 96 Wash. App. 773, 780 (1999) (citation omitted). Only hours reasonably expended on successful claims should be included in the lodestar calculation; the court must exclude hours billed on unsuccessful or unrelated claims.[2] *Bowers v. Transamerica Title Ins. Co.*, 100 Wash.2d 581, 597, 675 P.2d 193 (1983). A reasonable hourly rate should account for factors such as the attorney's customary hourly billing rate, the level of skill required by the litigation, the time limitations imposed on the litigation, the amount of potential recovery, the attorney's reputation, and the undesirability of the case. *Id.*

Defendants have not challenged Plaintiff's proposed lodestar calculation. ECF No. 223 at 11. Having independently reviewed the record, the Court finds that the lodestar calculation reflects a reasonable number of hours expended at reasonable hourly rates. The total number of hours claimed by Mr. Kirby and Mr. Delay are reasonable in view of the type of claims asserted, the complexity of the issues, the experience of both counsel, and the fact that the case proceeded through trial. Similarly, the hourly rates claimed by Mr. Kirby and Mr. Delay ($250/hr.

---

[2] This issue is addressed in detail in Section A.4, *infra*.

ORDER ~ 3

and $350/hr. by Mr. Kirby for pretrial and trial preparation, respectively, and $350/hr. for Mr. Delay), appear to be commensurate with prevailing rates in the Spokane legal community for similar legal services.  *See* ECF Nos. 203-206. These same conclusions apply to the hours and rates billed by Plaintiff's counsel's associate attorneys, law clerks and support staff.  Accordingly, the Court finds that the proposed lodestar figure of $471,085.50 is reasonable.

### 2. Contingency Multiplier

After calculating a lodestar figure, a court "may consider an adjustment based on additional factors under two broad categories: the contingent nature of success, and the quality of work performed." *224 Westlake, LLC v. Engstrom Prop., LLC*, 169 Wash. App. 700, 735 (2012) (quotation and citation omitted). The party seeking the adjustment bears the burden of persuasion.  *Id.*  Because the lodestar calculation results in a "presumptively reasonable fee," however, the court must exercise caution in deciding whether an adjustment is appropriate.  *Id.* at 738. In short, a contingency adjustment "should be reserved for exceptional cases where the need and justification are readily apparent." *Xieng v. Peoples Nat'l Bank of Washington*, 63 Wash. App. 572, 587 (1991) (quotation and citation omitted), *aff'd* 120 Wash.2d 512 (1993).

Here, Plaintiff requests that the lodestar figure be multiplied by 1.5 to account for both the "contingent nature" and "undesirability" of the case.  ECF No.

200 at 18, 20.  As an initial matter, the Court finds no basis for applying a multiplier based upon the "undesirability" of the case.  Assuming for the sake of argument that the case was in fact undesirable, that fact is adequately reflected by counsel's hourly billing rates.  *See Bowers*, 100 Wash.2d at 597 (explaining that "the undesirability of the case" is a factor which should be considered in assessing the reasonableness of an attorney's claimed hourly billing rate).  This factor does not support an upward adjustment to the lodestar figure.

Nor is an upward adjustment warranted by the contingent nature of success.  The purpose of a contingency multiplier is to incentivize attorneys to take high-risk contingency cases that might otherwise go unprosecuted.  *Chuong Van Pham v. City of Seattle, Seattle City Light*, 159 Wash.2d 527, 541 (2007).  In determining whether a contingency multiplier is warranted in a given case, a court must assess the likelihood of success at the outset of the litigation and should disregard time spent on the case after recovery has been assured.  *Bowers*, 100 Wash.2d at 598-99.  While a trial court has broad discretion in awarding a contingency multiplier, it should generally refrain from doing so when "the hourly rate underlying the lodestar fee comprehends an allowance for the contingent nature of the availability of fees."  *Bowers*, 100 Wash.2d at 598-99.  Stated differently, a court should only award a contingency multiplier when "the lodestar figure does not adequately account for the high risk nature of the case."  *Pham*, 159 Wash.2d at 542.

ORDER ~ 5

The Court finds that this was not a particularly high-risk case.  Although Plaintiff's prospect of recovery was by no means certain, there is nothing to suggest that this case posed an above-average risk.  Indeed, an objective observer presented with the facts alleged in Plaintiff's complaint might reasonably have concluded that Plaintiff's prospects of recovery were above average in comparison to those of other employment discrimination plaintiffs given the type of discrimination at issue (sexual orientation), the particular statements alleged to have been made ("queer," "faggot," "all faggots should be shot," etc.), and the fact that Plaintiff was very well liked among the O'Reilly managers in Seattle.  In sum, this is not a case in which the lodestar figure fails to adequately account for an unusually high risk.

Finally, the risk inherent in accepting a complex employment discrimination case is reflected in counsel's hourly billing rates.  As illustrated by the declarations submitted in support of the instant motion (*see* ECF Nos. 203-206), the rates of $250 per hour for general litigation and $350 per hour for trial preparation and trial are the prevailing rates for the plaintiff's-bar, employment law attorneys in Spokane.  These rates reflect "the inherent risk in taking on employment cases of this nature representing individuals who otherwise would not have the financial wherewithal to compensate an attorney on an hourly basis, coupled with the inherent risk that at the end of [the] day the attorney will never be compensated."

1   Love Aff., ECF No. 204, at ¶ 12.  Based upon the foregoing considerations,

2   Plaintiff's request for an additional contingency multiplier is denied.

3          3.  Request for Disclosure of Defense Counsel's Billing Records

4          Plaintiff seeks an order compelling Defendants to produce copies of their

5   billing records.  "Because [Defendants] engaged in aggressive litigation tactics,"

6   Plaintiff asserts, a comparison of the parties' billing records "is necessary to

7   evaluate [Plaintiff's] level of success."  ECF No. 231 at 3.  Although somewhat

8   unclear, the logic of this argument appears to be that a side-by-side comparison of

9   billing records is needed to place Plaintiff's requested award in proper perspective.

10         This argument is not well taken.  As noted above, Defendants have not

11  challenged the reasonableness of Plaintiff's proposed lodestar figure.  Indeed,

12  Defendants have expressly conceded that the requested award is reasonable in

13  terms of the hours billed and the rates charged.  ECF No. 237 at 2, 4, 6, 8.  Instead,

14  Defendants contend that the requested award is unreasonable in view of the

15  *specific results obtained* at trial.  Given that the reasonableness of Plaintiff's

16  proposed lodestar figure is not at issue, a comparison of the parties' billing records

17  would not be instructive.  *Cf. Murray v. Stuckey's, Inc.*, 153 F.R.D. 151, 153 (N.D.

18  Iowa 1993) (ordering production of defense counsel's billing records where

19  defendants had contested the number of hours and hourly rates claimed by the

20  Plaintiff).  Plaintiff's motion to compel is therefore denied.

4. <u>Reduction to Account for Limited Success</u>

The parties agree that the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424 (1983) provides the appropriate framework for evaluating the reasonableness of the requested fee award given that Plaintiff prevailed on only a subset of his claims. ECF No. 200 at 10-11; ECF No. 223 at 8. "Under *Hensley*, the reasonableness of a fee award is determined by answering two questions: First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making the fee award?" *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (quotation omitted). In a typical case, the analysis proceeds as follows:

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If [the claims were] unrelated, the final fee award may not include time expended on the unsuccessful claims.
>
> *    *    *
>
> [T]hen the court must apply the second part of the analysis, in which the court evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive.

*Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995) (internal quotations, citations and modifications omitted); *accord Steele*, 96 Wash. App. at

782-85 (applying *Hensley* framework to fee request submitted by successful

WLAD employment discrimination plaintiff).

The first prong of the *Hensley* analysis focuses on whether the plaintiff's

causes of action can be separated for purposes of apportioning attorney's fees

between successful and unsuccessful claims.  The court's task is simply to make a

practical determination about whether the case can be broken down into individual

component claims:

> In some cases a plaintiff may present in one lawsuit distinctly
> different claims for relief that are based on different facts and legal
> theories.  In such a suit . . . counsel's work on one claim will be
> unrelated to his work on another claim. . . . [Statutes limiting recovery
> of attorney's fees] to prevailing parties require[] that these unrelated
> claims be treated as if they had been raised in separate lawsuits, and
> therefore no fee may be awarded for services on the unsuccessful
> claim[s].
>
> *      *      *
>
> In other cases the plaintiff's claims for relief will involve a common
> core of facts or will be based on related legal theories.  Much of
> counsel's time will be devoted generally to the litigation as a whole,
> making it difficult to divide the hours expended on a claim-by-claim
> basis.  Such a lawsuit cannot be viewed as a series of discrete claims.
> Instead the district court should focus on the significance of the
> overall relief obtained by the plaintiff in relation to the hours
> reasonably expended on the litigation.

*Hensley*, 461 U.S. at 434-35 (internal citation and footnote omitted).  If the court

determines that it would be possible to apportion fees between successful and

unsuccessful claims, it must discontinue the *Hensley* analysis and award fees only on the successful claims.  *Odima*, 53 F.3d at 1499; *McCown*, 565 F.3d at 1103.

If the court determines that the claims are "related" to such a degree that fees cannot practically be apportioned, by contrast, it must proceed to step two of the *Hensley* analysis.  At this step, the court focuses upon the plaintiff's degree of success as a whole.  As the Court explained in *Hensley*,

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.  In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . . The result is what matters.

> If, on the other hand, a plaintiff has achieved only partial or limited success, the [lodestar figure] may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . Again, the most critical factor the degree of success obtained.

> \*   \*   \*

> There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment.

461 U.S. at 435-37 (footnote omitted).

Courts applying the second prong of the *Hensley* analysis have identified at least three factors that a district court should consider when assessing a plaintiff's

degree of success.  First, the court should consider the amount of damages awarded by the jury as compared to the amount of damages requested by the plaintiff. *McCown*, 565 F.3d at 1104.  While "test[s] of strict proportionality" are forbidden, qualitative comparisons are encouraged.  To the extent that a court concludes that the plaintiff has "fall[en] far short of his goal," it must account for that limited success when determining a reasonable award.  *Id.*

Second, the court must consider the relationship between the amount of damages awarded and the amount of attorney's fees requested.  *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 809-10 (9th Cir. 1995).  Because an award must be "reasonable in relation to the success achieved," *Hensley*, 461 U.S. at 434, "[i]t is an abuse of discretion for the district court to award attorneys' fees without considering the relationship between the extent of success and the amount of the fee award."  *McGinnis*, 51 F.3d at 810 (quotation and citation omitted).  Here again, the use of ratios or other mathematic measures of proportionality is not permitted; the court must simply make a qualitative assessment based upon the facts of the specific case.  *Id.* at 808.

When evaluating this factor in the context of a civil rights case, the court must also consider the "private attorney general" theory upon which fee shifting statutes like RCW 49.60.030(2) are based.  *Id.* at 810.  In general terms, this theory "allows the fee award to exceed what a reasonable individual would pay lawyers

1    for the benefit conferred on him." *Id.* at 810.  Because the benefit conferred by fee

2    shifting statutes "is not infinite," however, the court must also consider "[w]hat the

3    lawyers do for their actual client" when evaluating the extent of the plaintiff's

4    success.  *Id.*

5          Third, the court must consider the more intangible measures of the plaintiff's

6    success.  Chief among these measures is the "results the plaintiff achieved for

7    himself and other members of society."  *McCown*, 565 F.3d at 1105.  "When a

8    decision has 'served the public interest by vindicating important constitutional

9    rights[,]' an award of attorney's fees that is disproportionate to the actual damages

10   [awarded] may be appropriate."  *Id.* (quoting *Rivera*, 477 U.S. at 572).

11         This factor is given particularly significant weight by Washington courts

12   evaluating the reasonableness of fee petitions under the WLAD.  In view of the

13   legislative pronouncement that discrimination "threatens . . . the rights and proper

14   privileges of its inhabitants [and] menaces the institutions and foundation of a free

15   democratic state," RCW 49.60.010, money damages can sometimes be "an

16   inadequate yardstick" of success on a WLAD claim.  *Martinez v. City of Tacoma*,

17   81 Wash. App. 228, 242 (1996).  Thus, where a WLAD plaintiff confers a

18   significant non-monetary benefit upon the public, the court must account for that

19   benefit in awarding a reasonable attorney's fee.  *See id.* (remanding for new

20   calculation of attorney's fees where WLAD plaintiff prevailed against "the very

ORDER ~ 12

agency charged with eradicating discrimination"); *Steele*, 96 Wash. App. at 784-85 (affirming award of $250,000 to WLAD plaintiff who recovered $43,500 in damages in view of trial court's finding that plaintiff had achieved "a significant degree of success to justify a full award of fees").

### a. *Relatedness of Claims*

Plaintiff contends that his claims were "related" to such a degree that it would be impractical to attempt to apportion fees among his successful WLAD retaliation claim and the remaining claims. The Court agrees. In reaching this finding, the Court notes that it experienced considerable difficulty distinguishing between Plaintiff's various claims throughout the course of this litigation. While certain claims were clearly related to a discrete set of facts (*e.g.*, the common law assault claim), many others tended to "merge" with each other and/or depend upon a series of events spanning several months. The parties appeared to experience similar difficulties, as evidenced by the fact that both counsel presented the Court with "executive summaries" of Plaintiff's causes of action (Defendants at the beginning of the summary judgment hearing and Plaintiff prior to the final jury instruction conference).

Moreover, Plaintiff's successful retaliation claim clearly shared a "common core" of facts with the vast majority of his unsuccessful claims. Although this claim merely required Plaintiff to prove that he was retaliated against for

1   "*complaining* . . . about harassing comments" or "*participating* in a proceeding" to

2   determine whether such harassment had occurred," ECF No. 191 at ¶ 7 (emphasis

3   added), evidence of the alleged harassment provided necessary context.  Indeed,

4   the Court would have permitted Plaintiff to introduce virtually all of the same

5   evidence had he been pursuing only the WLAD retaliation claim.  In the final

6   analysis, it is simply not possible to distinguish between Plaintiff's successful and

7   unsuccessful claims for purposes of awarding attorney's fees.  Accordingly, the

8   Court will proceed to the second step of the *Hensley* analysis—whether the

9   requested award is reasonable in view of Plaintiff's level of success.

10                    *b.  Level of Success*

11          As noted above, there are three main factors relevant to evaluating the

12   reasonableness of a requested fee award under *Hensley*: (1) the relationship

13   between damages awarded and damages requested; (2) the relationship between

14   damages awarded and attorney's fees requested; and (3) whether the outcome of

15   the lawsuit conferred a significant non-pecuniary benefit upon the plaintiff or the

16   general public.  *McCown*, 565 F.3d at 1104, 1105; *McGinnis*, 51 F.3d at 809-10;

17   *Martinez*, 81 Wash. App. at 242.  Once again, it bears repeating that "[t]here is no

18   precise rule or formula for making these determinations," and that the court must

19   exercise discretion in setting a reasonable fee.  *Hensley*, 461 U.S. at 436-37.

20

1    Having carefully reviewed the record, the Court finds that Plaintiff achieved

2    only a moderate degree of success.  As to the first factor, Plaintiff recovered only

3    $55,000 in compensatory damages despite requesting just over $11 million in non-

4    economic damages from the jury during closing argument.  Moreover, Plaintiff's

5    recovery was strictly economic in nature, representing only the reasonable value of

6    his lost wages and benefits from the date on which he resigned from the Spokane

7    store to the date on which he was finally rehired at a store in Seattle.  Notably,

8    Plaintiff was awarded *no* non-economic damages for mental and emotional pain

9    and suffering.  In light of the manner in which the case was tried and the arguments

10   which his counsel made to the jury, Plaintiff's failure to recover any non-economic

11   damages can only be described as a very significant defeat.

12   With regard to the second factor, Plaintiff's requested award of $471,085.50

13   in attorney's fees is plainly disproportionate to the $55,000 damages award.  The

14   Court is mindful of the pitfalls of using ratios as a measure of reasonableness.

15   Nevertheless, it cannot ignore the fact that Plaintiff's requested award is

16   approximately eight-and-a-half (8.5) times higher than the jury's damages award.

17   While not *per se* unreasonable, this ratio is distressingly high in relation to the

18   limited success that Plaintiff achieved at trial.  As Defendants correctly note, there

19   is good reason to question "whether a reasonable person would pay two lawyers

20   [$471,085.50] in attorney's fees . . . to obtain a monetary judgment against one of

1    four Defendants in the amount of $55,000." ECF No. 223 at 2 (citing *McGinnis*,

2    51 F.3d at 810).

3        The Court also recognizes that RCW 49.60.030(2) is designed to encourage

4    victims of discrimination (as well as their attorneys) to act as private attorneys

5    general, *see McGinnis*, 51 F.3d at 810, and that awards several times higher than a

6    plaintiff's actual recovery will often serve this purpose. As the Ninth Circuit

7    explained in *McGinnis*, however, the benefits conferred by fee-shifting statutes are

8    finite. 51 F.3d at 805. Ultimately, attorneys must be held to account for the results

9    actually obtained for their clients. *Id.*; *see also Hensley*, 461 U.S. at 436

10   ("Congress has not authorized an award of fees [under 42 U.S.C. § 1988]

11   whenever it was reasonable for a plaintiff to bring a lawsuit or whenever

12   conscientious counsel tried the case with devotion and skill. Again, the most

13   critical factor is the degree of success obtained."). Where, as here, the amount

14   requested bears no reasonable relationship to the judgment obtained, an equitable

15   reduction is warranted. *Hensley*, 461 U.S. at 436-37.

16       As to the third factor, the Court finds that Plaintiff's success conferred only

17   an incremental non-pecuniary benefit upon the public. As discussed above,

18   Plaintiff's success at trial was rather limited. Although he convinced the jury that

19   O'Reilly retaliated against him for *complaining* about unlawful harassment, he

20   failed to prove that these Defendants were legally responsible for any underlying

harassment.  This failure significantly reduced the non-pecuniary benefit to the public.  Whereas a finding of discrimination on the basis of Plaintiff's sexual orientation would have drawn significant attention to this infrequently-litigated issue, the jury's sole finding of unlawful retaliation served as merely another reminder that retaliating against an employee for complaining about harassment is illegal.  Stated differently, the verdict relegated the public significance of this case to the fact-bound realm of unlawful retaliation.  Because the jury found that no actionable discrimination occurred, there is no reason to believe that the verdict will appreciably deter future discrimination, whether on the basis of sexual orientation or otherwise.

Plaintiff did, however, achieve a significant non-pecuniary benefit for himself: re-employment as a Retail Service Specialist ("RSS") with Defendant O'Reilly.  As Plaintiff testified at trial, his employment with O'Reilly comes with significant health insurance benefits—benefits which are particularly valuable to Plaintiff because of his health conditions.  The trial testimony further established that Plaintiff genuinely enjoys working as an RSS and that his skills are very well-suited to the position.  These intangible measures of success are not reflected in the $55,000 judgment, and the Court deems it appropriate to account for them in evaluating the reasonableness of the requested award.

In view of the foregoing considerations, the Court concludes that Plaintiff's requested award of attorney's fees should be reduced to **$210,000**. This sum strikes an appropriate balance between, on one hand, the vindication of Plaintiff's right to be free from unlawful retaliation under Washington law, and, on the other, the limited degree of success that Plaintiff achieved on his other claims. This award is also sufficient to promote the "private attorney general" theory upon which RCW 49.60.030(2) is based, while simultaneously honoring the principle that an award of fees must bear a reasonable relationship to the judgment. *Hensley*, 461 U.S. at 436-37; *McGinnis*, 51 F.3d at 810.

5. Costs

Defendants contend that Plaintiff is not entitled to recover costs unrelated to his successful WLAD retaliation claim. ECF No. 223 at 23-24. For the reasons addressed above, the Court has found that Plaintiff's claims are related to such a degree that it would be impractical to apportion fees between successful and unsuccessful claims. This finding applies with equal force to apportionment of costs; because the claims are grounded in a common core of facts and related legal theories, any attempt to apportion costs between them would be unduly artificial. Defendants have not otherwise challenged the reasonableness of Plaintiff's costs, and the Court independently concludes that they were reasonably incurred. *See Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (allowing recovery of reasonable

costs claimed in conjunction with fee request under 42 U.S.C. § 1988).

Accordingly, the Court will award Plaintiff non-taxable costs in the claimed

amount of **$18,747.78**.[3]

**B. Plaintiff's Motion For New Trial**

Plaintiff's motion for new trial seeks the following relief: (1) a new trial on

his disability discrimination and retaliation claims under the ADA and the WLAD;

(2) a new trial on his successful WLAD retaliation claim due to "an inconsistent

jury verdict;" (3) a new trial on the issue of punitive damages on his Title VII and

ADA claims; (4) a new trial on the issue of non-economic damages (but not

liability) on his successful WLAD retaliation claim; (5) a change of venue to the

Western District of Washington; and (6) in the alternative, an order amending the

judgment to include pre-judgment interest in the amount of $2,879.15 and an offset

for negative or adverse tax consequences in the amount of $6,810.00.

1. <u>Disability Discrimination & Retaliation Claims</u>

Plaintiff contends that the Court erred in dismissing his ADA and WLAD

disability discrimination and retaliation claims at the close of the evidence and that

a new trial is warranted to correct the error. ECF No. 225 at 6. Plaintiff's

---

[3] This award does not include the taxable costs claimed separately in Plaintiff's
Bill of Costs (ECF No. 199).

arguments in support of this request are nothing more than conclusory statements; he has not pointed to any specific evidence that the Court overlooked in dismissing these claims for lack of evidentiary support.  Accordingly, for the reasons stated on the record at the close of the evidence, the Court will adhere to its initial ruling. There was no evidence from which a reasonable jury could conclude that Defendants discriminated against Plaintiff on the basis of his disability or retaliated against him for requesting an accommodation of his disability.

      2.  <u>Inconsistent Verdict</u>

      Plaintiff asserts that the jury's verdict is "inconsistent" as between his WLAD and Title VII retaliation claims.  According to Plaintiff, the verdict is inconsistent because "[t]he jury found sufficient evidence for liability on the WLAD retaliation claim, but not for liability on the Title VII retaliation claim, which were all based upon the very same trial evidence."  ECF No. 225 at 6.  This argument ignores the fact that the standards for establishing causation between protected conduct and adverse employment action are different under the Title VII and the WLAD.  To prevail on his Title VII retaliation claim, Plaintiff was required to prove that Defendant O'Reilly took adverse employment action against him "because" he engaged in protected activity.  ECF No. 181, Instruction No. 21. To prevail on his WLAD retaliation claim, by contrast, Plaintiff was merely required to prove that his participation in protected activity was a "substantial

factor" in Defendant O'Reilly's decision to subject him to adverse employment action.  ECF No. 181, Instruction No. 24.  The Court's final jury instructions properly recited the applicable standards of causation for "single motive" retaliation claims under Title VII and the WLAD.  *See* Ninth Circuit Model Jury Instruction No. 10.3 (Retaliation—Elements and Burden of Proof): Washington Pattern Instruction No. 330.05 (Employment Discrimination—Retaliation).  The jury clearly appreciated the distinctions between the two standards in rendering its verdict.  The verdict is not inconsistent.

### 3. Punitive Damages

Plaintiff asserts that the Court erred in ruling that he failed to present sufficient evidence to warrant sending the issue of punitive damages to the jury.  According to Plaintiff, the fact that Defendant O'Reilly offered to rehire him in exchange for a release of all claims amounts to "malice and/or careless disregard [for] [Plaintiff's] federal rights protected by the ADA and Titled VII."  ECF No. 225 at 7.  Plaintiff further avers that the evidence "shows an entrenched defiant employer with vast resources that willfully and knowingly violated state and federal civil rights laws, *and acted in the face of this awareness*, with the aid and assistance of its corporate counsel and local outside counsel."  ECF No. 238 at 5 (emphasis in original).

1    Plaintiff's arguments on this issue fare no better than they did at the close of

2    the evidence at trial.  Contrary to Plaintiff's assertions, the February 11, 2011

3    settlement letter does not reflect malice or reckless indifference toward his

4    federally protected rights.  Instead, the settlement letter reflects a straightforward

5    effort by O'Reilly to settle a dispute.  And while the Court previously ruled that the

6    letter could be admitted as substantive evidence of unlawful retaliation, *see* ECF

7    No. 159, the terms of the offer simply do not rise to the level of malice or reckless

8    disregard of Plaintiff's rights—particularly given that litigation had already been

9    initiated and that both parties were represented by able counsel when the offer was

10    made.  The fact that Plaintiff happened to find the offer unpalatable does not

11    warrant sending the issue of punitive damages to the jury.

12    4.  <u>Non-Economic Damages for Successful WLAD Retaliation Claim</u>

13    Plaintiff asserts that he is entitled to a new trial on the issue of non-economic

14    damages (but not liability) pertaining to his successful WLAD retaliation claim.

15    According to Plaintiff, a new trial is warranted because the jury "obviously

16    overlooked or ignored" evidence of non-economic damages presented by his

17    psychological expert, Dr. Nathan Henry.  ECF No. 225 at 7.  In lieu of a new trial,

18    Plaintiff would accept an additur from Defendants in the amount of $250,000.

19    There is absolutely no basis for awarding Plaintiff a new trial on the issue of

20    non-economic damages.  The jury considered Dr. Henry's testimony concerning

Plaintiff's psychological condition—and rejected it.  The fact that the testimony

was "undisputed" is irrelevant; the jury simply did not did not believe that Plaintiff

had suffered emotional distress as a result of Defendant O'Reilly's conduct.

Nor is there any reason to believe that the jury was confused by the

distinction between economic and non-economic damages when it made its award.

Contrary to Plaintiff's assertions, the fact that the jury asked the Court whether an

award of damages (either economic or non-economic) on this claim would "have

any legal ramifications towards O'Reilly's responsibility for future lawsuits," *see*

ECF No. 186, does not indicate that the jury was "confused regarding *past and*

*future damages*." ECF No. 238 at 7 (emphasis in original).  To the contrary, the

Court interpreted this question to reflect concern that Plaintiff might get a "second

bite at the apple" if the jury decided not to award any damages.  In any event, the

Court responded to the question by instructing the jury not to consider the

ramifications of its decisions beyond this case, ECF No. 187, and the Court's final

instructions were abundantly clear as to the measure of economic and non-

economic damages.  *See* ECF No. 181, Instruction No. 26. Accordingly, the jury's

finding on the issue of non-economic damages will not be disturbed.

### 5. Change of Venue

Plaintiff contends that venue is proper in the Western District of Washington

because "[t]he effects of O'Reilly's discrimination and retaliation . . . were in

Seattle when O'Reilly refused to re-hire [Plaintiff] earlier." ECF No. 225 at 8.
The issue of venue was litigated during the early stages of this case after Plaintiff
filed his complaint in the Western District of Washington. After initially raising
the issue *sua sponte*, *see* ECF No. 5, Judge Pechman sided with Plaintiff in
concluding that venue was proper in the Western District pursuant to 42 U.S.C. §
2000e-5(f)(3). ECF No. 7.

Defendants subsequently moved to transfer the case to this District pursuant
to 28 U.S.C. § 1404(a) under the doctrine of *forum non conveniens*. ECF No. 14.
After the motion was fully briefed, Judge Pechman granted a discretionary transfer
of the case to this District for the convenience of the parties and witnesses. ECF
No. 28 at 3-7. The Court has reviewed Judge Pechman's order and wholeheartedly
concurs with her reasoned decision. Transfer of this case to the Eastern District of
Washington was proper under § 1404(a), and there are no new circumstances that
would warrant transferring it back to the Western District.

6. Amendment of Judgment

Plaintiff requests that the Court amend the judgment to include (1) $2,879.15
in prejudgment interest; and (2) $6,810.00 to offset negative or adverse tax
consequences. The parties agree that Plaintiff is entitled to both prejudgment
interest and an offset for adverse tax consequences; the only disputed issue is how
the award of prejudgment interest should be calculated. ECF No. 232 at 11-14.

The Court finds that Defendants' calculation is more accurate.  The calculation made by Plaintiff's economic expert, Todd Carlson, improperly assumes that Plaintiff earned the entire $55,000 in back pay on October 1, 2010, the day that Plaintiff resigned his employment from the Spokane O'Reilly store. Defendants' calculation accounts for the fact that Plaintiff would have earned these wages gradually over time.  ECF No. 233-1.  Accordingly, the Court will award Plaintiff **$1,685.11** in prejudgment interest and **$6,810.00** to offset adverse tax consequences of recovering the entire lump sum in tax year 2013.

### C. Defendants' Motion to Amend Judgment

Defendants have moved to amend the judgment of $55,000 to $27,000. Defendants argue that this amendment is necessary to account for the fact that Plaintiff submitted a request to reduce his work schedule to nineteen (19) hours per week shortly before resigning from the Spokane O'Reilly store in order to maintain his Social Security disability benefits.  In their view, the jury's award of $55,000— which was presumably based upon calculations which assumed a forty-hour work week—exceeds the amount necessary to make Plaintiff whole.

The problem with this argument is that the jury rejected it.  After Mr. Carlson testified that Plaintiff would have earned $55,496.00 in back pay during the relevant period based upon an assumed forty-hour work week, defense counsel asked him to revise his calculations to account for a part-time work schedule of

1  only nineteen hours per week.  Defense counsel even provided Mr. Carlson with

2  his own personal calculator to emphasize that an adjustment was necessary.  After

3  making the adjustment, Mr. Carlson testified that Plaintiff would have earned only

4  $27,000 if he had worked a part-time schedule of 19 hours per week.  The jury was

5  well aware of Plaintiff's plan to reduce his work hours in order to maintain his

6  Social Security disability benefits.  Nevertheless, it decided to award Plaintiff back

7  pay based upon a full-time work schedule.  This decision, while perhaps unduly

8  generous, was supported by the evidence.  Accordingly, Defendants' motion to

9  amend the judgment is denied.

10  **IT IS HEREBY ORDERED:**

11      1.  Plaintiff's Motion for Attorney's Fees, Expert Fees and Other Costs

12         (ECF No. 200) is **GRANTED in part** and **DENIED in part**.  Plaintiff is

13         hereby awarded **$210,000** in attorney's fees and **$18,747.78** in costs

14         pursuant to RCW 49.60.030(2) in conjunction with his successful WLAD

15         retaliation claim.

16      2.  Plaintiff's Motion to Compel Production of Defense Counsel's Billing

17         Records (ECF No. 231) is **DENIED**.

18      3.  Plaintiff's Motion for New Trial (ECF No. 225) is **GRANTED** as it

19         pertains to amending the judgment to include **$1,685.11** in prejudgment

20

interest and **$6,810.00** to offset adverse tax consequences.  The motion is **DENIED** in all other respects.

4.  Defendants' Motion to Amend Judgment (ECF No. 222) is **DENIED**.

The District Court Executive is hereby directed to enter this Order, enter an **AMENDED** Judgment as described above with an effective date of March 20, 2013, provide copies to counsel, and **CLOSE** the file.

**DATED** May 30, 2013.



THOMAS O. RICE
United States District Judge

ORDER ~ 27